UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EB-BRAN PRODUCTIONS, INC.,

    Plaintiff,

v.

ROBERT J. RITCHIE, ET AL,

    Defendants.
                                        /

Case No. 06-11564

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FOR SANCTIONS [7]**

This matter comes before the Court on (1) its Order requiring Plaintiff EB-Bran Productions, Inc. ("EB-Bran") to Show Cause in writing why its attorney, law firm, and/or EB-Bran should not be sanctioned pursuant to Federal Rule Civil Procedure 11(c)(1)(B) for violating Rule 11(B); and (2) Defendants' motion for summary judgment and for sanctions pursuant to 28 U.S.C. § 1927.  For the reasons stated below, Defendants' motion is GRANTED.

**I.    Facts**

The Court is well aware of the background facts alleged in Plaintiff's current complaint, having presided over two companion cases, *Ritchie v. Williams*, Case No. 01-71712 ("*Ritchie* Action"), and *EB-Bran Productions, Inc. v. Warner Elektra Atlantic, Inc.*, Case No. 03-75149 ("*Warner Elektra* Action").

**A. First Lawsuit -** *Ritchie* **Action**

On May 2, 2001, Robert Ritchie ("Ritchie") and Top Dog Records, Inc. ("Top Dog") filed an action in this Court against Alvin Williams seeking, among other things, a declaration that the "Top Dog" mark belonged to Ritchie.[1]

On May 16, 2001, Williams filed a counterclaim against Ritchie and Top Dog alleging infringement of the Top Dog mark. Then, in June 2001, EB-Bran, Bow-Wow, and Dog Top Publishing, a division of Bow-Wow, filed a lawsuit in state court against Ritchie, Top Dog, and others alleging state-law claims of breach of contract, unjust enrichment, fraud and misrepresentation, breach of fiduciary duties, constructive trust, accounting, conversion, and injunctive relief ("State-Court Action"). That State-Court Action was subsequently removed to this Court and consolidated with the *Ritchie* Action. (5/24/02 Order.)

Prior to removal and during discovery in the State-Court Action, EB-Bran sought documents from Atlantic Recording Corporation ("Atlantic") and Warner-Tamerlane Publishing, Inc. ("Warner-Tamerlane"). Atlantic is the recording company with whom Ritchie is under contract to market his musical recordings. Warner-Tamerlane publishes his compositions. When Atlantic and Warner-Tamerlane objected to various subpoenas, EB-Bran stated its intent to add them as parties – Atlantic to the federal *Ritchie* Action and Warner-Tamerlane to the State-Court Action.

In lieu of being added as a party to the federal *Ritchie* Action, EB-Bran and Atlantic agreed that if Atlantic produced various documents regarding Ritchie, EB-Bran would not add Atlantic as a party defendant. This agreement is evidenced by a Stipulated Order

---

[1] EB-Bran Productions, Inc. ("EB-Bran") and Bow-Wow Publishing Corporation ("Bow-Wow") were later added in an amended complaint.

entered in the federal *Ritchie* Action.  (4/25/02 Stipulated Order.)  Paragraph 6 of that Stipulated Order provides that:

> In exchange for Atlantic's production of the documents and affidavits identified in paragraphs 1 through 5 herein, [Williams, EB-Bran and Bow-Wow] agree, warrant and represent that Atlantic will not be added or named as a party to this action and/or any action related to the subject matter of this action and that Atlantic has fully complied with and fulfilled all of its obligations under [Williams, EB-Bran and Bow-Wow]'s Subpoena and Notice to Produce Documents to Atlantic dated February 13, 2002; . . . .

(4/25/02 Stipulated Order ¶ 6.)

In the State-Court Action, EB-Bran and Warner-Tamerlane agreed to a similar procedure and signed a stipulation, but the State Court judge would not enter it.  (4/19/02 Hrg. Tr. at 3-5, 8, 12.)  Instead, the State Court judge granted EB-Bran's motion, adding Warner-Tamerlane as a party defendant, and then subsequently granted Warner-Tamerlane's oral motion to dismiss because EB-Bran failed to state a claim for relief against Warner-Tamerlane.  (*Id.* at 12-15, 18-25, 29-30.)  The State-Court Action was subsequently removed to this Court and consolidated with the *Ritchie* Action.  (5/24/02 Order.)

In *Ritchie*, this Court granted Ritchie and Top Dog's motion for summary judgment and denied EB-Bran, Williams, and Bow-Wow's cross motion.  It held that several state law claims asserted by these plaintiffs were completely preempted by the Copyright Act and thus barred by the three-year statute of limitations found in the Copyright Act.  It further held that the non-preempted state-law claims were likewise time-barred under the

3

applicable Michigan statutes of limitations.[2]  (2/03/03 Order.)  Judgment was entered on February 3, 2003, in favor of Ritchie and Top Dog.

This Court's decision was affirmed by the Sixth Circuit Court of Appeals on January 11, 2005.  *See Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005) (holding that the complete preemption doctrine applied in this copyright case; that state-law breach of contract, unjust enrichment, misrepresentation, conversion, injunctive relief or similar claims that were the equivalent of copyright infringement claims were completely preempted by the Copyright Act; that breach of fiduciary duty and breach of contract claims that did not implicate either ownership or infringement of copyrighted music were not preempted; that both the preempted and non-preempted claims were time-barred; and that Williams, EB-Bran and Bow-Wow abandoned the Top Dog trademark).

### B.  Second Lawsuit - *Warner Elektra Atlantic* Action

On November 24, 2003, EB-Bran filed a lawsuit against Defendants Ritchie and Top Dog (prevailing parties in the *Ritchie* litigation), Atlantic (which had a Stipulated Order from EB-Bran promising that EB-Bran would not bring an action against Atlantic on the same subject matter addressed in the *Ritchie* litigation), Warner-Tamerlane (who was dismissed with prejudice in the State-Court Action before it was removed and consolidated with *Ritchie*), Ivy Hill Corporation and Cinram International (CD manufacturers for Atlantic), Lava Records (a record company, owned in part by Atlantic, that released Richie's albums),

---

[2]EB-Bran's motions for reconsideration, to vacate, and for a new trial based on newly discovered evidence were also denied.

4

Warner Media Services,[3] Warner Elektra-Atlantic Corporation, and John and Jane Doe. EB-Bran's complaint alleged state-law claims of declaratory relief, accounting of property and master revenues, common law conversion, statutory conversion, unjust enrichment, constructive trust, misappropriation, and injunctive relief in connection with the same underlying transactions and occurrences that gave rise to its prior federal and state-court actions.

On December 23, 2003, Defendants removed EB-Bran's action to this Court, asserting that this Court had removal jurisdiction because EB-Bran's state-law claims were completely preempted by the federal Copyright Act, and because complete diversity existed between the parties and the amount in controversy exceeded $75,000.  This Court subsequently denied EB-Bran's motion to remand, concluding that it had subject matter jurisdiction over EB-Bran's claims at the time of removal because EB-Bran's state-law tort and equitable claims of conversion, statutory conversion, unjust enrichment, misappropriation, accounting, constructive trust, injunctive and declaratory relief were properly recharacterized as copyright claims and thus completely preempted by the Copyright Act.  (6/9/05 Order.)

After removal, EB-Bran filed a first amended complaint, alleging state-law claims of claim and delivery, conversion, trespass to chattel, and injunctive relief.  This amended complaint alleged that Ritchie created 14 songs that belong to it, but Ritchie granted Defendants the right to record, distribute, market, and sell the songs despite EB-Bran's exclusive right to do so.  (Am. Compl. ¶¶ 14-26.)  It further alleged that Defendants have

---

[3] Defendants asserted that they were not aware of any entity called Warner Media, Inc. or Warner Music Services.

unlawfully exploited, reproduced, leased, licensed, copied, distributed, and marketed the songs to which EB-Bran held exclusive rights to exploit. (Am. Compl. ¶¶ 14-26, 29, 34, 37, 39-40, 42-46, and 51.) EB-Bran sought both monetary and injunctive relief seeking to have Defendants enjoined from "wrongfully exert[ing] dominion and control over EB-BRAN's master tape recordings and act[ing] in a manner inconsistent with Defendants' rights." (*Id.* at ¶ 51.)

This second action came before the Court on Defendants' motion for summary judgment. On November 18, 2005, this Court granted Defendants' motion concluding that (1) EB-Bran's claims against Defendant Atlantic were barred under an agreement not to sue; (2) EB-Bran's claims against Defendants Ritchie, Top Dog and Warner-Tamerlane were barred under the doctrine of claim preclusion; and (3) EB-Bran's claims against the remaining Defendants were barred under the doctrine of issue preclusion. (11/18/05 Order, Doc. #56.) The Court subsequently granted Defendants' motion for Rule 11 sanctions and assessed sanctions in the amount of $40,616 against EB-Bran's attorneys, Demetrius Jones, Gregory Reed, and Stephanie Hammonds, and their respective law firms, jointly and severally, but not against EB-Bran. (4/10/06 Order, Doc. # 81.)

### C. Current Action

On March 30, 2006, EB-Bran's new counsel filed this lawsuit against each of the Defendants who had successfully defeated EB-Bran's claims in Case No. 03-75149 and adds two new Defendants: Edward Andrews, Defendant Ritchie's manager, and William Horton, Defendants' counsel in Case Nos. 01-71712 and 03-75149. The claims asserted in EB-Bran's current complaint involve the same underlying transactions and occurrences that gave rise to EB-Bran's prior federal and state-court actions.

EB-Bran's current complaint alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, by participating in a RICO enterprise through a pattern of racketeering activity in violation of § 1962(c) and by conspiring to engage in a pattern of racketeering activity in violation of § 1962(d).  The alleged RICO predicate acts include "criminal copyright infringement, trafficking in certain goods bearing counterfeit marks, retaliation against a federal witness, extortion of a court officer, interstate transportation of stolen property, and obstruction of justice" and mail and wire fraud.  (Compl. at 3 and ¶¶ 54, 56, 58.)

EB-Bran alleges that Defendant Atlantic Record Corp. and "its affiliates" are, in fact, a criminal enterprise that operates as a fence by laundering and exploiting intellectual property that Defendant Ritchie "and others" have stolen.  EB-Bran asserts that, because the copyrights at issue here really belong to EB-Bran, Defendants have illegally infringed on EB-Bran's copyrights and have illegally obtained profits deriving from these copyrights.  (Compl. at 2-3 and ¶¶ 21-26.)

Specifically, EB-Bran alleges that all of the Defendants in Case No. 03-75149, along with Ritchie's manager, Edward Andrews,[4] and Defendants' counsel in the prior Actions, William Horton, are all liable under RICO for taking part in or conspiring to take part in an illegal extortion scheme that injured EB-Bran's business or property.  The alleged illegal extortion scheme consists of Defendants' pursuit and defense of the claims in Case Nos.

---

[4]The sole allegation in the complaint concerning Defendant Andrews, Ritchie's manager, states that he is liable under RICO because Defendants' counsel  "reported back" to him concerning the alleged January 3, 2006 "extortion" letter.  (Compl. at ¶ 51.) The sole evidence proffered in support of this claim is a "cc" notation on the January 3, 2006 letter responding to EB-Bran's office of settlement indicating that a copy went to "Mr. Punch Andrews."  (Pl.'s Ex. D.)

7

01-71712 and 03-75149, the threat and pursuit of Rule 11 sanctions against EB-Bran's former counsel, and the January 3, 2006 written response to EB-Bran's former counsel's offer to settle Case No. 03-75149 (an offer EB-Bran rejected).  (Compl. at 3 and ¶¶ 27-51, 54, 56-58.)

EB-Bran's current complaint also asserts a common law claim for abuse of process against Defendants because they "proffered unlawful theories of ownership. . . and sought to mislead the court in pursuing illegitimate legal theories, all with an eye to leveraging their extortionate demands" and "sought to leverage an illegitimate motion for sanctions" so as to "extort [EB-Bran]'s valid and remaining intellectual property rights." (Compl. at ¶¶ 60-62.)

On March 31, 2006, Defendants removed EB-Bran's current action to this Court, asserting that this Court had removal jurisdiction because EB-Bran had alleged federal RICO claims.

**D.  Order to Show Cause**

On April 13, 2006, this Court issued an order requiring EB-Bran to show cause in writing why Plaintiff's attorney, law firm, and/or Plaintiff should not be sanctioned pursuant to Federal Rule Civil Procedure 11(c)(1)(B) for violating Rule 11(b).  Specifically, the Court required EB-Bran to explain why the civil RICO claims it had asserted in its most-recent complaint against individual and corporate Defendants who were also parties in previous lawsuits and who obtained final judgments in their favor are not barred under the doctrine of *res judicata*.  The Court further required EB-Bran to address how, in light of those prior final judgments, civil RICO claims could be asserted against Edward Andrews, Defendant Ritchie's manager, for communicating with Ritchie's attorneys on matters concerning that prior litigation (Pl.'s Compl. at ¶ 51, p. 18) or against William Horton, defense counsel in the

prior litigation, for filing a Rule 11 motion for sanctions and making an offer of settlement in that prior litigation (Pl.'s Compl. ¶¶ 51, 60-62).  Pursuant to Rule 11(b), the Court required EB-Bran to show that a reasonable inquiry was conducted and that the claims "and other legal contentions" in its complaint "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law".  Fed. R. Civ. P. 11(b)(2).

This matter is presently before the Court on its Order to Show Cause and on Defendants' motion for summary judgment and for sanctions.  Defendants' motion argues that they are entitled to summary judgment because (1) all claims asserted against Defendants, with the exception of Defendants Andrews and Horton, are barred by claim preclusion; and (2) all claims against Defendants Andrews and Horton fail as a matter of law.  Defendants further argue that, pursuant to 28 U.S.C. § 1927, sanctions against EB-Bran are appropriate here.

## II.  Analysis

### A.  Defendants' Request for Summary Judgment

#### 1.  Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an

element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### 2. Claims Against all Defendants Except Andrews and Horton

Defendants argue that EB-Bran's claims against all Defendants, except Andrews and Horton, are barred under the doctrine of claim preclusion. This Court agrees.

The doctrine of res judicata encompasses the concepts of both claim and issue preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). "Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). The doctrine broadly precludes relitigation of claims previously adjudicated and

those that should have been but were not raised in the prior suit. *Id.* Claim preclusion will bar a subsequent action:

(1) where the prior decision was a final decision on the merits;
(2) where the present action is between the same parties or their privies as those to the prior action;
(3) where the claim in a present action should have been litigated in the prior action; and
(4) where an identity exists between the prior and present actions.

*Id.*

These elements are satisfied here. First, there was a prior final decision on the merits in *Ritchie v. Williams*, Case No. 01-71712, and *EB-Bran Productions, Inc. v. Warner Elektra Atlantic, Inc.*, Case No. 03-75149. Second, with the exception of Defendants Andrews and Horton, all parties in the present action were parties in Case No. 03-75149. Third, despite EB-Bran's arguments to the contrary, the final two requirements are also satisfied.

The claims asserted here against all Defendants, except Andrews and Horton, could have been raised in Case No. 03-75149. EB-Bran was aware of the facts giving rise to the RICO and abuse of prosecution claims pursued here at the time it was pursuing its claims in Case No. 03-75149. Its RICO claims allege numerous predicate acts, including criminal copyright infringement, trafficking in certain goods bearing counterfeit marks, retaliation against a federal witness, interstate transportation of stolen property, obstruction of justice, and mail as well as wire fraud. (Compl. at 3 and ¶¶ 54, 56, 58; Am. Resp. to OSC at 13-14; Resp. to Defs.' Mot. at 11-12.) EB-Bran's RICO claims alleging predicate acts of extortion and conspiracy to extort as well as its common law abuse of process claims are based on the fact that Defendants pursued litigation and advanced certain legal arguments and claims in Case Nos. 01-71712 and 03-75149; threatened, in a 2003 phone message, to

11

seek attorney fees against EB-Bran and its former counsel in a prior action; and pursued Rule 11 sanctions against EB-Bran's former counsel in Case No. 03-75149. (Compl. at 3 and ¶¶ 29-30, 51, 60-62; Am. Resp. to OSC at 14-15.)  These are facts that EB-Bran was aware of while Case No. 03-75149 was pending and before a final Judgment was entered and thus could have been raised in that prior suit.  There also exists an identity of facts giving rise to EB-Bran's claims in the prior actions and the present action and an identity of evidence needed to prove the claims in these actions.  *See Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).  Accordingly, EB-Bran's claims against all Defendants except Andrews and Horton are dismissed.

### 3.  Claims Against Defendants Andrews and Horton

The Court now addresses Defendants' argument that it is entitled to summary judgment on all claims asserted against Defendants Andrews and Horton.

#### a.  Abuse of Process Claims

EB-Bran asserts a common law abuse of process claim alleging that Horton, as Defendants' counsel, and Andrews, as Ritchie's manager, "proffered unlawful theories of ownership over the master copies of recordings," "sought to mislead the court in pursuing illegitimate legal theories," and "sought to leverage an illegitimate motion for sanctions concerning litigation over master copies of recordings" in an effort to extort EB-Bran's "valid and remaining intellectual property rights." (Compl. ¶ 62.)  These claims are without merit. They relate to:  (1) claims asserted in EB-Bran's complaint in Case No. 03-75149 which Defendants successfully defeated with legitimate legal theories (11/18/05 Order, Doc. #56); (2) the successful Rule 11 motion for sanctions filed by Defendants' counsel, William Horton, in Case No. 03-75149 (4/10/06 Order, Doc. #81); and (3) Horton's January 2006

12

written response to EB-Bran's settlement offer in Case 03-75149; an offer that EB-Bran rejected.

"To present a meritorious claim of abuse of process, a plaintiff must show that the defendant had used a proper legal procedure for a purpose collateral to the intended use of that procedure." *Dupuis v. Kemp*, No. 263880, 2006 WL 401125, *2 (Mich. Ct. App. Feb. 21, 2006) (citing *Bonner v. Chicago Title Ins. Co.*, 487 N.W.2d 807, 812 (Mich. Ct. App. 1992)). "The gravamen of the misconduct upon which liability is imposed is not the wrongful procurement of legal process or the wrongful initiation of civil proceedings; it is the misuse of the process, no matter whether properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* "An action for abuse of process lies for the improper use of process <u>following its issuance</u>, not for maliciously causing it to issue." *Id.* (emphasis added).

Contrary to EB-Bran's arguments here, Defendants used the process – litigation and defense in the prior cases – for its intended purpose. Moreover, there is no evidence of Defendants improper use of process following their successful prosecution of the prior cases and their motion for Rule 11 sanctions. Accordingly, EB-Bran's abuse of process claims are dismissed.

### b. RICO Claims Against Defendants Andrews and Horton

EB-Bran has not come forward with any evidence, as it must, to show that Defendants Andrews or Horton participated in the operation or management of the alleged RICO enterprise it identifies as "Atlantic Record Corp. and its affiliates." (Compl. at 3.)

13

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  To prove a § 1962(c) RICO violation, EB-Bran must prove:

1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors.

*VanDenBroeck v. Commonpoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000) (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993)).  EB-Bran must also show that Defendants Andrews and Horton participated in the RICO scheme and that they "participated in the operation or management of the enterprise itself."  *Id.* (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) and *Stone v. Kirk*, 8 F.3d 1079, 1091 (6th Cir. 1993)).  Merely aiding and abetting the affairs of an alleged RICO enterprise by approving or pursuing litigation, approving or pursuing Rule 11 sanctions against EB-Bran and its attorneys, and rejecting of an offer of settlement is insufficient to satisfy the requirement that Defendants Andrews or Horton "operated or managed" the alleged RICO enterprise.  *See Reves*, 507 U.S. at 178-79.

In *Reves*, the Supreme Court construed the words "conduct" and "participate" in the phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs."  It rejected the argument that Congress intended that the word "participate" be used "as a synonym for 'aid and abet.'"  *Reves*, 507 U.S. at 178.  Rather, it concluded that "Congress chose a middle ground, consistent with a common understanding of the word

14

'participate' -- 'to take part in.'" *Id.* at 179. The Court further concluded that word "conduct" required "some degree of direction." *Id.* Thus, "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.* The Court also observed that "[t]he 'operation and management' test expresses this requirement in a formulation that is easy to apply." *Id.* Accordingly, the Court concluded, one is not subject to liability under § 1962(c) "unless one has participated in the operation or management of the enterprise itself." *Id.* at 183.

EB-Bran's complaint and its Responses to the Court's Order to Show Cause and Defendants' motion for summary judgment fail to allege any such participation by Defendants Andrews and Horton in the operation or management of the alleged RICO enterprise, let alone present any admissible evidence supporting such operation or management. Accordingly, this Court grants Defendants' motion for summary judgment and dismisses Plaintiffs' §§ 1962(c), (d) RICO claims against Defendants Andrews and Horton.

Moreover, despite EB-Bran's arguments to the contrary, it has failed to present any admissible evidence showing that Defendant Andrews's approval of and Defendant Horton's conduct in connection with its successful defeat of all claims asserted by EB-Bran in Case Nos. 01-71712 and 03-75149, including Defendant Horton's successful pursuit of Rule 11 sanctions against EB-Bran's former counsel in Case No. 03-75149, constitute illegal acts of extortion or conspiracy to extort. The same is true for Defendant Horton's January 3, 2006 response to EB-Bran's offer to settle the claims then remaining in Case No. 03-75149, which EB-Bran rejected. Accordingly, EB-Bran's RICO claims, brought

15

pursuant to 28 U.S.C. §§ 1962(c), (d), against Defendants Andrews and Horton are dismissed.

### C. Defendants' Request for Sanctions Under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that: "Any attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." An award of sanctions under § 1927 is discretionary. *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996). In the Sixth Circuit, § 1927 sanctions are warranted "when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (internal quote and citation omitted). "[T]he attorney's misconduct, while not required to have been carried out in bad faith, must amount to more than simple inadvertence or negligence that has frustrated the trial judge." *Id.* "Fees may be assessed without a finding of bad faith, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (internal quotation and citation omitted).

EB-Bran's counsel reasonably should have known that the claims asserted in the Complaint against those Defendants who were also Defendants in Case No. 03-75149 were barred by the doctrine of claim preclusion. EB-Bran's counsel reasonably should have known that the RICO and abuse of process claims asserted against Defendants Andrews and Horton for the successful defense of EB-Bran's prior claims against them, the

successful pursuit of Rule 11 sanctions against EB-Bran's former counsel, and for responding to EB-Bran's settlement offer were frivolous. Accordingly, EB-Bran's current counsel unreasonably multiplied the proceedings by pursuing this litigation. Accordingly, Defendants' motion for § 1927 sanctions is granted.

Defendants' counsel has submitted an affidavit requesting $8,071.00 in attorney fees and costs ($250 filing fee and $40 courier fees) and attaches a detailed invoice of services performed. Based upon this Court's review of the affidavit and supporting documentation, the requested attorneys fees are reduced to exclude work on matters other than this case and to reflect a reasonable amount of time required to defend Plaintiff's claims. Accordingly, this Court approves $5,290.00 in sanctions, reflecting $290 in costs and the remainder in attorney fees as sanctions under § 1927.

### III. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment and sanctions is GRANTED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 28, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager